2015R00525/DMC

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | Criminal No. 16- **547** (AET) |
| | : | |
| v. | : | 18 U.S.C. §§ 1349, and 371 |
| | : | |
| SHEILA KAHL | : | |
| | : | INFORMATION |
| | : | |

The defendant having waived in open court prosecution by indictment,

the United States Attorney for the District of New Jersey charges that:

1.    At all times relevant to this Information:

## The Good Samaritans of America

a.    The Good Samaritans of America was a purported non-profit

located in Point Pleasant, New Jersey.

b.    SETH REHFUSS resided in Somerset, New Jersey and was

the founder of The Good Samaritans of America.

c.    Defendant SHEILA KAHL resided in Point Pleasant, New

Jersey, and was a partner of SETH REHFUSS in The Good Samaritans of

America.

d.    Through The Good Samaritans of America, SETH REHFUSS,

defendant SHEILA KAHL, and others targeted low-income senior citizens and

claimed to be "the Trusted Nonprofit" available to assist senior citizens with

eligibility for a laundry list of government programs through in person

presentations.  The Good Samaritans of America promised to help senior

citizens navigate "food allowances, farmers market fresh foods allowance, free cell phone, prescription assistance, utility assistance, dental clinic information, eyeglass voucher, hearing aid scholarship, final wishes and request book and a DNA swab test." To encourage attendance at events planned at senior centers throughout New Jersey, SETH REHFUSS, defendant SHEILA KAHL, and other representatives of The Good Samaritans of America advertised "free ice cream" for senior citizens who attended.

e.    In reality, The Good Samaritans of America was a front for SETH REHFUSS, defendant SHEILA KAHL, and others to defraud the Medicare Program out of more than $1 million by obtaining DNA samples from senior citizens for unnecessary genetic testing, recruiting and paying healthcare professionals to authorize the unnecessary genetic testing, and ultimately submitting the DNA samples for analysis at laboratories capable of billing Medicare. In doing so, SETH REHFUSS, defendant SHEILA KAHL, and others wrongfully accessed individually identifiable health information of the senior citizens, in the form of the results of the genetic testing in order to effectuate the scheme.

## The Medicare Program

2. The Medicare program is a federal program established by the Social Security Act of 1965 (codified as amended in various sections of Title 42, United States Code) to provide medical services, medical equipment, and supplies to aged, blind, and disabled individuals who qualify under the Social Security Act (hereinafter "beneficiaries"). The Medicare Part B program is a

2

federally funded supplemental insurance program that provides supplementary Medicare insurance benefits for individuals aged sixty-five or older and certain individuals who are disabled. The Medicare Part B program pays for medical services, including diagnostic testing, for beneficiaries.

3. Among those services covered by Medicare Part B, during all times relevant to this Information, was genetic testing. For Medicare to pay the cost of genetic testing, Medicare rules required genetic testing to be medically necessary based on the judgment of a physician who is treating the beneficiary.

### Genetic Testing and The Good Samaritans of America

4. Laboratory One was a clinical laboratory located in Virginia.

5. Laboratory Two was a clinical laboratory located in California.

6. Laboratory One and Laboratory Two performed a type of genetic testing. The purpose of this type of genetic testing is to determine the way an individual metabolizes medications based on small differences in an individual's DNA. To conduct genetic testing, a DNA sample is taken from the patient by using a cheek (buccal) swab to collect enough cells to obtain a genetic profile. The DNA sample is submitted to a clinical laboratory for analysis and the results of the test are to be sent back to the healthcare provider that deemed the testing necessary.

7. SETH REHFUSS and other representatives of The Good Samaritans of America worked as sales representatives for Laboratory One and Laboratory Two. As sales representatives, SETH REHFUSS and others were in contractual relationships with an entity representing Laboratory One and in direct

contractual relationships with Laboratory Two.  As such, they were paid a sales

commission each and every time Laboratory One and Laboratory Two were paid

by an insurance company or Medicare for analysis of a DNA sample.

Defendant SHEILA KAHL shared in the commission payments paid to SETH

REHFUSS and others by Laboratory One and Laboratory Two.

## The Scheme

8.  During the course of the presentations, in order to convince senior

citizens to submit to genetic testing, SETH REHFUSS used fear-based tactics

— suggesting all senior citizens would be vulnerable to heart attacks, stroke,

cancer and suicide if they did not have the genetic testing — along with a sales

pitch claiming that genetic testing allowed for "personalized medicine."  As part

of the scheme, SETH REHFUSS, defendant SHEILA KAHL, and others

frequently collected DNA samples in the community rooms where the

presentations took place or made arrangements to visit the senior citizens'

apartments on another day to take the DNA swab.  Regardless of the timing or

location of the swabbing, the DNA swab was collected without the involvement

of any healthcare provider and without any determination by a healthcare

provider that such testing was medically necessary or appropriate.

9.  Indeed, all that mattered to SETH REHFUSS, defendant SHEILA

KAHL, and other representatives of The Good Samaritans of America, was

whether the senior citizen had Medicare coverage.

10.   At the "free ice cream" presentations, SETH REHFUSS, defendant

4

SHEILA KAHL, and other representatives of The Good Samaritans of America convinced hundreds of senior citizens to submit to unnecessary genetic testing without any involvement of a healthcare professional.

11.     As part of the scheme, The Good Samaritans of America, through SETH REHFUSS, recruited multiple doctors, physician's assistants and nurse practitioners via advertisements posted on the website "Craigslist" to falsely state that they referred patients for genetic testing they deemed necessary for the patient's treatment.  Specifically, the advertisements on Craigslist sought a part time doctor, physician's assistant or nurse practioner "2 hours a week $2000 (Your Office)."

12.     In this manner, SETH REHFUSS made arrangements with multiple healthcare providers, frequently paying them thousands of dollars per month to sign requisition forms required by the laboratories to conduct genetic testing on the DNA swabs previously collected.  The healthcare providers had never met those patients and had no role in their care or treatment

13.     CC-1, a co-conspirator not named herein, was a physician with a medical practice in New Jersey who accepted payments from SETH REHFUSS, and defendant SHEILA KAHL, in exchange for signing off on requisitions for genetic testing, which effectively acted as the referral for laboratory analysis.

14.     CC-2, a co-conspirator not named herein, was a physician with a medical practice in New Jersey who accepted payments from SETH REHFUSS, and defendant SHEILA KAHL, in exchange for signing off on requisitions for genetic testing, which effectively acted as the referral for laboratory analysis.

15.     It was further part of the scheme that SETH REHFUSS and defendant SHEILA KAHL wrongfully accessed the protected health information of the senior citizens.  SETH REHFUSS and defendant SHEILA KAHL accessed the results of the genetic testing conducted by Laboratory One and Laboratory Two, purporting to be the healthcare professional, when they were not.  In fact, the healthcare professionals paid to authorize the genetic testing never received results of the tests they authorized for the patients who they never treated.

16.     As a result of the scheme, Medicare paid Laboratory One and Laboratory Two more than $1 million for completion of unnecessary genetic testing on senior citizens.

## COUNT ONE
(Conspiracy to Commit Health Care Fraud)

Paragraphs 1 through 16 are re-alleged as if fully set forth herein.

17.     From in or about July 2014 through in or about December 2015, in the District of New Jersey, and elsewhere, the defendant,

SHEILA KAHL,

did knowingly and willfully conspire and agree with SETH REHFUSS and others to execute, and attempt to execute, a scheme and artifice to defraud health care benefit program and to obtain, by means of false and fraudulent pretenses, representations, and promises, money owned by, or under the custody or control of, any health care benefit program in connection with the delivery of or payment for health care benefits, items or services, contrary to Title 18, United States Code, Section 1347, in violation of Title 18, United States Code, Section 1349.

6

**Count Two**
(Conspiracy to Wrongfully Access Individually Identifiable Health Information
and to Pay Kickbacks)

Paragraphs 1 through 16 are re-alleged as if fully set forth herein.

18.     From in or about February 2015, through at least December 2015, in the District of New Jersey, and elsewhere, the defendant,

SHEILA KAHL,

did knowingly and intentionally conspire with others to commit offenses against the United States, that is:

(a) to knowingly and for reason other than permitted by Title 42, United States Code, Chapter 7, Subchapter XI, Part C, obtain and cause to be obtained individually identifiable health information relating to an individual, with the intent to use, and cause to be used, said information for personal gain.  Specifically, defendant SHEILA KAHL, accessed the name, dates of birth, Social Security Numbers, and genetic profile, which had been collected by Laboratory One and Laboratory Two, with the intent to use said information for personal gain. Contrary to Title 42, United States Code, Section 1320d-6(a)(3) and (b)(3);

(b) to knowingly and willfully pay remuneration, directly and indirectly, overtly and covertly, in cash and in kind, that is, kickbacks and bribes, from The Good Samaritans of America, in exchange for the furnishing and arranging for the furnishing of items and services, namely, referring prescriptions for patients to Laboratory One and Laboratory Two for genetic testing, for which

payment was made in whole or in part under a Federal health care program, namely, Medicare and Medicaid, contrary to Title 42, United States Code, Section 1320a-7b(b)(2).

## Object of the Conspiracy

The object of conspiracy was for SETH REHFUSS, defendant SHEILA KAHL, and others to fraudulently obtain additional revenue for Laboratory One and Laboratory Two, and in turn, themselves, by making false representations to Medicare that genetic tests were ordered by senior citizens' treating physicians and that the genetic testing was medically necessary, when in fact, the samples were collected and genetic tests were ordered without regard to medical necessity in order to carry out the fraud.

## Manner and Means of the Conspiracy

The manner and means by which SETH REHFUSS, defendant SHEILA KAHL, and others sought to accomplish the object of the scheme included, among other things, the following:

19.    As described in paragraphs 8 through 10, SETH REHFUSS, defendant SHEILA KAHL, and other representatives of The Good Samaritans of America used "free ice cream" and fear-based tactics to convince senior citizens to have DNA swabs taken.

20.    As described in paragraphs 11 through 14, SETH REHFUSS, defendant SHEILA KAHL, and others recruited multiple doctors, physician's assistants and nurse practioners via advertisements posted on the

website "Craigslist" to falsely state they referred patients for genetic testing they deemed necessary for the patients' treatment.

21.     It was a part of the conspiracy that SETH REHFUSS and defendant SHEILA KAHL drafted contractual agreements between The Good Samaritans of America and the healthcare providers who were paid to falsely state that they referred patients for genetic testing they deemed necessary for the patients' treatment when, in actuality, the healthcare providers had never met those patients and had no role in their care or treatment.

22.     Specifically, it was part of the conspiracy that SETH REHFUSS paid CC-1 and CC-2 and other healthcare professionals thousands of dollars to falsely represent that they were the treating physician for senior citizens they never met and sign off on requisitions for genetic testing and analysis to be done by Laboratory One and Laboratory Two, which then billed Medicare, for the genetic testing.

23.     It was further part of the conspiracy that SETH REHFUSS and defendant SHEILA KAHL submitted the fraudulent referrals to Laboratory One and Laboratory Two and caused the Medicare Program to pay more than $1 million from which SETH REHFUSS and defendant SHEILA KAHL obtained commissions of at least tens of thousands of dollars.

24.     It was further part of the conspiracy that SETH REHFUSS and defendant SHEILA KAHL controlled fraudulent email accounts for the healthcare providers, including CC-1 and CC-2, and used them to access the

individually identifiable health information of the senior citizens for their own personal use.

### Overt Acts

In furtherance of the conspiracy, and in order to effect the object thereof, defendant SHEILA KAHL and her co-conspirators committed or caused the commission of the following overt acts in the District of New Jersey and elsewhere:

1. On or about April 30, 2015, defendant SHEILA KAHL drafted a contract between CC-1 and SETH REHFUSS through The Good Samaritans of America, whereby SETH REHFUSS agreed to pay the healthcare provider thousands of dollars for "review and signing of patient files who requested a DNA drug sensitivity test." CC-1 never examined the Medicare patients for whom CC-1 contracted to authorize a test.

2. On or about May 4, 2015, defendant SHEILA KAHL created an email account for CC-1 that defendant SHEILA KAHL and SETH REHFUSS controlled to access the individually identifiable health information of senior citizens that agreed to testing.

3. On or about May, 4, 2015, defendant SHEILA KAHL falsely represented herself to Laboratory One as "Lynne Kahl," the office manager of CC-1's office. By doing so, defendant SHEILA KAHL was in a position to intercept any questions that Laboratory One and/or Laboratory Two may have had about the DNA samples taken of senior citizens at presentations given by The Good Samaritans of America.

4. On or about June 3, 2016, defendant SHEILA KAHL tracked the commissions paid to SETH REHFUSS and a representative of The Good Samaritans of America. Defendant SHEILA KAHL received a percentage of those commissions.

5. On or about June 24, 2015, defendant SHEILA KAHL created an email account for CC-2 that defendant SHEILA KAHL and SETH REHFUSS controlled to access the individually identifiable health information of senior citizens that agreed to testing.

6. On or about June 22, 2015, SETH REHFUSS falsely represented himself to Laboratory One as "John Reh," the office manager of CC-2's office, when he was not. By doing so, SETH REHFUSS was in a position to intercept any questions that Laboratory One and/or Laboratory Two may have had about the DNA samples taken of senior citizens at presentations given by The Good Samaritans of America.

All in violation of Title 18, United States Code, Section 371.

## FORFEITURE ALLEGATION

1.      The allegations contained in this Information are hereby realleged and incorporated by reference for the purpose of noticing forfeiture pursuant to Title 18, United States Code, Section 982(a)(7).

2.      Upon conviction of the offense in violation of Title 18, United States Code, Sections 1952(a)(3) and 2, the defendant, SHEILA KAHL, shall forfeit to the United States, pursuant to Title 18, United States Code, Section 982(a)(7), all right, title, and interest in the sum of $52,705. which constitutes or is derived, directly or indirectly, from gross proceeds traceable to the offense of conviction.

3.      If any of the property described above, as a result of any act or omission of the defendant:

        a.      cannot be located upon the exercise of due diligence;

        b.      has been transferred or sold to, or deposited with, a third party;

        c.      has been placed beyond the jurisdiction of the court;

        d.      has been substantially diminished in value; or

e.      has been commingled with other property which cannot be

divided without difficulty, the United States shall be entitled, pursuant to Title

21, United States Code, Section 853(p), as incorporated by Title 18, United

States Code, Section 982(a)(7), to forfeiture of any other property of defendant

SHEILA KAHL up to the value of the property described in the preceding

paragraph.



PAUL J. FISHMAN
United States Attorney